12646

HANNA v. NATIONAL LOAN & EXCHANGE BANK *ET AL.*

(147 S. E., 863)

221

230

. *Mr. Randolph Murdaugh,* for appellant, cites:

*Messrs. George Warren* and *Hugh O. Hanna,* for respondent,

April 24, 1929.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The issues in this case are stated in the decree of the Circuit Judge, Hon. J. Henry Johnson, who heard the case on the testimony taken before a Special Referee. After careful consideration of the entire record in the case, we are satisfied that his Honor, Judge Johnson, reach a correct conclusion. The exceptions are, therefore, overruled, and it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE COTHRAN (concurring in result) : This is an action by the plaintiff, as Receiver of the Planters' & Merchants' Bank of Varnville, against the National Loan

& Exchange Bank of Columbia, to recover the proceeds of certain items transmitted to it by the Varnville Bank for collection and alleged to have been collected by the Columbia Bank. The Receiver of the Bank of Hampton has been made a party defendant as claiming an interest of some kind in the fund in dispute.

For convenience I shall refer to the National Loan & Exchange Bank of Columbia as the Columbia Bank, the Planters' & Merchants' Bank of Varnville as the Varnville Bank, and the Bank of Hampton as the Hampton Bank. There are two other banks remotely connected with the litigation, the Loan & Exchange Bank of Hampton and the Bank of Estill, but, as their connection is so remote and they will appear so seldom in the case, no abbreviated title is necessary. The contest, as will appear, is between the Receiver of the Varnville Bank and the Receiver of the Hampton Bank.

The admitted facts are these:

On July 3, 1926, the Varnville Bank transmitted in what is termed a "cash letter," certain items to the Columbia Bank for collection and account. The sum total of these items was $2,924.43. They were received by the Columbia Bank and credited to the deposit account of the Varnville Bank, subject to the collection of the items by the Columbia Bank and the receipt by it of the actual funds represented by the items.

Among them, a part of the $2,924.43, were the following checks drawn by depositors in the named banks upon them, payable to various parties who had placed them in the Varnville Bank for collection:

Checks upon the Hampton Bank .............. $ 627.95
Checks upon the Loan & Exchange Bank of
   Hampton ............................. 1,419.42
A check upon the Bank of Estill ............. 30.00

Total ...................................$2,077.37

(Note. How the difference between $2,924.43, the total amount of the items transmitted, and the total of the foregoing items, $2,077.37, $847.06, is accounted for, does not appear in the record, and I assume is of no consequence in this litigation.)

Between July 3d and 8th the foregoing items, aggregating $2,077.37, were transmitted ·by the Columbia Bank to the Hampton Bank for collection and account. The Hampton Bank collected the items drawn upon the Loan & Exchange Bank of Hampton, $1,419.42 and the item drawn upon the Bank of Estill, $30, and charged to the several depositors who had drawn upon it, the amount of the checks so drawn, $627.95.

On July —th the Hampton Bank, which had a credit balance upon its deposit account with the Columbia Bank sufficient to meet it, transmitted to the Columbia Bank, on account of said items, its check on the Columbia Bank for $2,077.37, which was received by the Columbia Bank on July 12th and charged against the deposit balance to the credit of the Hampton Bank upon its books.

The Hampton Bank closed at the usual hour on July 10th, which was Saturday, and did not open for business on the 12th, which was Monday, having been taken over by State Bank Examiner on the morning of that day, or possibly on the Saturday night preceding.

On July 14th, the Columbia Bank having learned of the collapse of the Hampton Bank, the transaction above related, in which it charged the $2,077.37 upon its books to the deposit account of the Hampton Bank, was reversed by a counter credit of that amount; at the same time it charged the account of the Varnville Bank with the same amount, included in the credit which had been given to it on the 3d when the items were transmitted by it as above stated.

Later both the Varnville Bank and the Hampton Bank were put into the hands of Receivers, and the contest here is between the Receivers of these banks over the $2,077.37 fund. The Columbia Bank has no interest in the controversy,

and it has by agreement of counsel been permitted to hold the disputed fund subject to a determination of the controversy between the Receivers of the two banks stated.

The Receiver of the Varnville Bank contends that, when the Columbia Bank received the check of the Hampton Bank in payment of the items which had been transmitted by the Varnville Bank to the Columbia Bank for collection, and by the Columbia Bank to the Hampton Bank for the same purpose, and charged the same to the deposit account of the Hampton Bank, the credit which the Columbia Bank had conditionally allowed to the Varnville Bank on July 3d, as stated above, was completed; that the transaction had the same effect as if the Columbia Bank had received the actual cash from the Hampton Bank; that the Columbia Bank had no right on July 14th to reverse the transaction by crediting the Hampton Bank with the amount of the alleged erroneous charge and debiting the Varnville Bank with the same amount.

The Receiver of the Hampton Bank, on the other hand, contends that, at the very moment on Monday, July 12th, that the Columbia Bank received the check of the Hampton Bank transmitted to it in payment of the collection of the items, and charged the Hampton Bank with it upon its books, the Hampton Bank, with all of its assets, had been taken over by the State Bank Examiner; that the check was the same as that of a dead man which died with the drawer, an insolvent corporation, in the hands of the Examiner under the statute, in exclusive possession and control of the assets of the corporation whose activities and powers of a corporation had passed from it. The Receiver also contended that the cashier of the Columbia Bank was fully informed, before the Columbia Bank received the check, that the Hampton Bank had failed to open its doors on Monday, July 12th, and was in the hands of the Examiner.

The testimony by agreement was taken before a Special Referee, and the case was heard by his Honor, Judge Johnson, at Allendale, on January 14, 1927. On August 22d he

filed a decree holding that, at the time the Columbia Bank received the check of the Hampton Bank and charged it to the account of that bank, it did not know of the failure of the Hampton Bank to open its doors on Monday, July 12th, and of its being taken over by the Examiner; that the transaction amounted to a compliance of the condition upon which the credit of July 3d was given to the Varnville Bank; and that the Varnville Bank became thereby the owner of the fund and entitled to recover it from the Columbia Bank, the stakeholder.

From this decree the Receiver of the Hampton Bank has appealed, claiming the fund as an asset of the Hampton Bank for distribution by him as Receiver.

The main points raised by the appellant are:

1. That there is error in the decree, to the effect that the Columbia Bank had no knowledge of the closing of the Hampton Bank at the time that its check was received and charged to its account.

In view of the fact that this is a law case in which the finding of fact by the Circuit Judge is opposed to the appellant's contention, and of the admission in the appellant's answer in conformity with the finding of the Circuit Judge, this contention of the appellant may be dismissed without further comment.

2. That even if the Columbia Bank had no such knowledge, it had no authority to charge the check to the account of the Hampton Bank, by reason of the fact that at the time of such transaction the Hampton Bank was insolvent, closed, and in the hands of the State Bank Examiner; that the charge was properly reversed when the clerical force of the Columbia Bank received information of the closing of the Hampton Bank.

The record is unfortunately lacking in two very important matters: It is alleged in the complaint, and admitted in the answer, that the check of the Hampton Bank transmitted to the Columbia Bank, in payment of the collected items, was dated *July 6th;* the cashier of the Columbia Bank testified

that it was received on the 12th; where was it in the meantime and when was it transmitted? We may take judicial notice that a letter moving by mail from Hampton to Columbia will be delivered in less than a day.

It is assumed that the State Bank Examiner took charge of the Hampton Bank at the request of the directors of that bank evidenced by a resolution. When was the meeting held, and when did the Examiner take over the bank?

The letter containing the check evidently was not mailed until Sunday the 11th or Saturday the 10th. Is it possible that it was mailed after the Examiner took over the bank? I think that it was incumbent upon the Receiver of the Hampton Bank to clear up these matters in doubt, and that, in the absence of evidence to the contrary, it must be assumed that the letter was mailed before the directors requested the Examiner to take over the bank.

It is evident that the check was not received by the Columbia Bank until after the Examiner took over the bank, for it appears that the bank did not open again after the usual closing hour on Saturday the 10th. The validity of the transaction, therefore, in which the Columbia Bank received the check on Monday the 12th and debited it to the Hampton Bank, depends upon the effect of completing this transaction after the Examiner took charge.

The Receiver of the Hampton Bank attempts to assimilate the practical payment of the check by the Columbia Bank (the debiting of the deposit account of the Hampton Bank with the amount of it) to the payment by a bank of a check drawn by an individual depositor who may have died between the date of the check and its presentation to the bank for payment; his position being that, when the Examiner took over the exclusive possession and control of the bank, its corporate activities were at an end, that it was dead, and that the same rule as in the case of an individual drawer should apply.

I think that there are two very sound reasons why this contention cannot be sustained:

1. Section 3981 of the Code provides that, upon request of the directors, the Examiner shall take over the bank for 30 days, and that during that period the bank may be allowed either to resume business or to liquidate its affairs. Certainly during that period its animation may be suspended, but, as long as the possibility of resuming business exists, the closed bank cannot be said to have breathed its last. The loss of its corporate activities does not take place, as is shown in the case of *Brown v. Hammett,* 133 S. C., 446, 131 S. E., 612, until the Court upon the application of the Examiner has ordered a liquidation by the directors as trustees.

2. While it has been held by quite a number of cases that the death of the drawer of a check, before its presentation for payment, produces a revocation of the authority of the bank to pay it, I think that the contrary is sustained by convincing logic by Mr. Morse and by Mr. Daniel. Morse Bank (6th Ed.), § 400; 2 Daniel Neg. Inst. (5th Ed.), § 1618b.

No reason is urged that on account of insolvency the Hampton Bank was without right to prefer the Columbia Bank as a creditor or the Varnville Bank, for whose benefit the remittance was made; the Hampton Bank had therefore the right to make the remittance in question, which completed the conditional credit which the Columbia Bank had given to the Varnville Bank on July 3d.

I therefore concur in the result of the decree of his Honor, Judge Johnson.